**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**LARCELYA SMITH,**                           **CASE NO.: 4:24cv32-MW-MAF**
                                              **FLA BAR NO.: 0739685**

      **Plaintiff,**

**v.**

**WAL-MART ASSOCIATES, INC.,**

      **Defendant.**

_____/

## AMENDED COMPLAINT

Plaintiff, LARCELYA SMITH, hereby sues Defendant, WAL-MART

ASSOCIATES, INC., and alleges:

## NATURE OF THE ACTION

1.    This is an action brought under the Florida Civil Rights Act,

codified in Chapter 760, Florida Statutes, as amended; the Americans

with Disabilities Act, 42 U.S.C. §12101 et seq., as amended, and under

the anti-interference and anti-retaliation provisions of the Family and

Medical Leave Act (FMLA) of 1993, codified at 29 U.S.C. §§2612, 2624.

2.    This action involves claims that are, individually, more than

Seventy-Five Thousand Fifty Dollars (750,000.00), exclusive of costs and

interest.

## THE PARTIES

3.      At all times pertinent hereto, Plaintiff, LARCELYA SMITH, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to her actual or perceived disabilities. Plaintiff is a member of a protected class for taking protected leave under the FMLA and suffering interference and retaliation thereafter.

4.      At all times pertinent hereto, Defendant, WAL-MART ASSOCIATES, INC., has been organized or operating under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5.      Plaintiff has satisfied all conditions precedent to bringing this action. As it pertains to her disability discrimination claim, Plaintiff was fired sometime between February 17, 2023, and February 21, 2023.  She filed her Charge of Discrimination with the Equal Employment Opportunity Commission on April 5, 2023. She was issued her Right to

Sue letter by the EEOC on or about July 24, 2023.  This action was filed

in Leon Circuit Court on Monday, October 23, 2023.

6.    As it pertains to Plaintiff's retaliation claim under the Family

& Medical Leave Act, Plaintiff was an eligible employee, having worked

for Defendant for more than 1,250 hours in the year immediately

preceding her need for leave and having been employed with Defendant

for more than one year.  Defendant employs more than 50 employees

within a 75-mile radius.  Defendant is a covered employer.

## STATEMENT OF THE ULTIMATE FACTS

7.    Larceyla Smith was born prematurely and at a low or

extremely low birth weight, commonly referred to by the acronyms LBW

or ELBW. The result is that she suffers a range of lifelong disabling

conditions.  By example, she has from birth suffered a severe hearing and

speech disability.  She has great difficulty understanding what someone

is saying unless she can read the speaker's lips. If the speaker is faced

away, or has an obstruction over their mouth - such as a hand, papers, or

a nontransparent mask – Smith is unlikely to hear and understand them.

8.    Tied to her hearing impairment is her severe speech

impediment. Ms. Smith is almost impossible to understand unless the

listener is facing her, is in close proximity, and the environment is relatively quiet. No reasonable person could engage Ms. Smith in a conversation without instantly noticing these limitations and recognizing them as disabilities. When possible, she relies on sign language using American Sign Language (ASL). (ASL) is a visual-spatial language used by the deaf and hard-of-hearing communities in the United States.

9.      When seeking employment, Ms. Smith has sometimes used the Division of Vocational Rehabilitation (DVR) to help land a job, successfully complete new-hire orientation, and, when needed, communicate with her employer about workplace issues. She did so when she sought work with Wal-Mart, and DVR helped her in that process. She began employment there in March 2021.

10.     One or more DVR representatives met with Wal-Mart management to discuss her severe speech and hearing impairments, and accommodations that would benefit Smith. This included, but may not have been limited to, the occasional involvement of DVR representatives in workplace conversations with management, the use of texting by Smith with coworkers and managers in lieu of verbal conversations, the importance of having speakers face Ms. Smith when talking to her, and

the occasional use of a DVR employee trained in ASL to facilitate workplace conversations. Wal-Mart has employee vests that contain a notice that the wearer is deaf or hard of hearing, but this store's managers never told her about it and never offered one to her.

11.     Further, Ms. Smith, due in part to her LWB or ELBW, was born before her bones were fully developmentally programmed.  As a consequence, she has a gait abnormality.  She walks with her feet turned inward. This can result in a distinctive waddling gait, with her hips swaying more than usual.  Smith is more likely to trip or stumble than others due tother toes pointing inward, making it harder to maintain balance. Additionally, she sometimes may find it difficult to stand with her feet parallel to each other, instead standing with her feet slightly apart or turned outwards to compensate for the inward rotation of her hips and legs.

12.     While her disabilities were obvious and known to store managers, Wal-Mart nonetheless claims both that it ". . .had (and still has) no knowledge of Ms. Smith's alleged disability. . ." and that she ". . .has never submitted a request for accommodation to Wal-Mart." Neither statement is true.

13.    Unfortunately, during Smith's employment, some Wal-Mart managers would mock her to her face, harass her, imitate her speech and walk, and turn their backs to her as she spoke, either to embarrass her or to make it difficult for her to communicate because of her speech and hearing disabilities. To illustrate, one manager, known as Chris, would imitate Plaintiff's speech defect directly to her face, attempting to mirror Smith's speech impediment. Members of Defendant's management would demand that Smith, who lives with her mother and depends on her mother for transportation, work later than her scheduled hours at night, and would threaten to fire her if she left. Smith would call her mother from work, crying, because of this kind of harassment. The demands that Smith work beyond the end of her shift, coupled with threats of firing, were extremely stressful. The same manager or managers did not make the same demands of, or threats toward, other employees who were not disabled; the same managers allowed others to leave as scheduled and would not threaten them with termination as was made to Smith.

14.    On February 15, 2023, Plaintiff's mother, Jacqueline (Jackie) Smith, received a call from Plaintiff's primary healthcare provider, Eula Weaver, an advanced practical registered nurse (APRN).  Ms. Weaver

had just received the results of blood tests conducted on Plaintiff a week or so earlier. Jackie Smith had arranged for the blood tests because her daughter, Plaintiff, had been complaining of head pain, general body weakness, and problems with her eyes. When Jackie Smith answered the call from APRN Weaver, Weaver told her that she needed to take her daughter - whom Jackie Smith had dropped off for a follow-up appointment at Weaver's office - immediately to the emergency room at Tallahassee Memorial Hospital (TMH)

15.   The test results indicated, according to Weaver, that there were abnormalities in Plaintiff's blood and that the condition was extremely dangerous. Based on Weaver's Jackie Smith left her job, went to Weaver's office to pick Plaintiff up, and immediately drove her to the emergency room at TMH.

16.   On the way to the hospital, Plaintiff insisted that they call the store to report her medical absence. Plaintiff initially called the store and spoke to a manager believed to be the overall store manager. Plaintiff attempted to explain the situation, but the store manager appeared to be struggling to understand what Plaintiff was saying. Jackie Smith asked Plaintiff to give her the phone, and Jackie began

talking to the manager. She explained that at the instruction of APRN Weaver, she was taking Plaintiff to TMH because of an emergency medical condition relating to a blood disorder.  According to Jackie Smith, the manager said "Ms. Smith, don't worry about it. Go ahead on and take care of CeCe [Plaintiff], and she can come back when she is feeling better." Jackie Smith asked if Plaintiff would lose her job because of this, and the manager responded "Oh, no. This is a medical situation."  Jackie Smith added that Plaintiff would likely be admitted overnight, and it was unclear how many days Plaintiff would be absent. The manager responded, "Okay, don't worry about it. She will be fine here."  The call lasted several minutes, according to Jackie Smith, because the manager kept asking questions about the situation.

17.    Plaintiff was admitted to TMH in the afternoon or evening of Wednesday, February 15, 2023. The threat to Plaintiff's health appeared to be related to anemia, a condition for which Plaintiff has been under a doctor's care, remains under a doctor's care, and takes medication. She remained in the hospital overnight and was discharged the next day. She remained at home Thursday, February 16, 2023, to deal with the condition, to rest, and to recover. Plaintiff recalls logging her absence in

the Wal-Mart app on both February 15, 2023 and February 16, 2023.  On

Friday, February 17, 2023, Plaintiff went to work and provided a doctor's

note to a member of the management team.  Plaintiff called or texted her

mother, and reported that she had provided the doctor's note to

management and that everything seemed fine, as the manager had told

Plaintiff to get to work.  And Plaintiff did so.

18.    After this series of events, Plaintiff recalls, she was told by

one of the managers who had harassed her about her disabling conditions

and told her to leave her work area and go to the office.  Plaintiff obeyed

this command, and when she arrived, she learned that the manager had

gone back into the computer, apparently changed the nature of the

absences, and made them unauthorized.  Plaintiff was then told to leave

because she was fired.  Plaintiff called her mother, who said that it

seemed incorrect, and told Plaintiff to try and clock back in. Plaintiff

tried, but she had been locked out of the system.  She was indeed fired.

19.    Plaintiff has retained the undersigned and is obligated to pay

her a reasonable fee for her services.  Defendant should be made to pay

said fee and costs.

9

## COUNT I
## DISABILITY DISCRIMINATION
## FLORIDA CIVIL RIGHTS ACT AND AMERICANS WITH DISABILITIES ACT

20.    This is an action against Defendant for disability discrimination under both the Florida Civil Rights Act and the Americans with Disabilities Act.

21.    Paragraphs 1(as it pertains to the Florida Civil Rights Act and ADA only),  2, 3 (except the last sentence), 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, and 19 are incorporated herein.

22.    Plaintiff was fired at least in part because of her disability, record of disability, or perceived disability. During the course of Plaintiff's employment with Defendant, she was treated differently than similarly situated non-disabled/perceived-as-disabled employees as outlined herein, culminating in her firing on pretextual grounds. Defendant, through its agents, including management, had long shown disdain and disrespect for Plaintiff and her obvious disabilities. No non-disabled employee was harassed as was Plaintiff, for any reason and then fired on pretextual grounds.  The harassment of Plaintiff leading up to her firing was explicitly premised on her disabilities and not related to

Plaintiff because of her job performance, her personality, or other characteristics unrelated to her disabilities.

23.    Defendant is liable for the differential treatment culminating in Plaintiff's firing. (Plaintiff is not alleging a failure to accommodate.)

24.    The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein led, at least in part, to Plaintiff's termination.

25.    Defendant's conduct and omissions constitute intentional discrimination and unlawful employment practices based upon Plaintiff's disabilities, perceived disabilities, or her record of having disabilities.

26.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. Plaintiff is entitled to injunctive/equitable relief and punitive damages.

## COUNT II
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT RETALIATION

27.    Paragraphs 1 (only as it relates to the anti-retaliation provision of the FMLA), 2, 3 (only as it relates to the anti-retaliation FMLA provision), 4, 6, 14, 15, 16, 17, 18, and 19 are incorporated herein.

28.    This is an action against Defendant for harassing Plaintiff due to needing, requesting, and using leave time, and for terminating Plaintiff for taking time off that was or would be authorized by and protected under the FMLA.

29.    Specifically, Plaintiff, after absences on and after February 15, 2023, which were of a kind and character protected by the FMLA, was fired.    Defendant had actual and sufficient information to know or reasonably believe Plaintiff was an eligible employee under the FMLA and was absent for an emergency medical condition that required hospitalization, an overnight stay, and treatment by a physician.

30.    Plaintiff was not required to specifically ask for FMLA leave and provided enough information so Wal-Mart was aware the leave was or may be covered by the FMLA. Further, Plaintiff provided notice to Wal-Mart as soon as possible and practical that she would need to use

medical leave of a kind protected by the FMLA. Wal-Mart, to the extent it had any confusion about Plaintiff's actual or likely entitlement to protected leave, could have asked her for information from the health care provider before approving FMLA leave and was obligated to allow 15 calendar days to provide the information. This it did not do. Instead, it fired her.

31. Defendant retaliated against Plaintiff for her actual use of FMLA-protected leave by refusing to authorize FMLA leave for her, by manipulating its records to deprive her of her protected leave and rights, by using her leave as a negative factor in the termination decision, and by counting the absences or tardies on and after February 15, 2023, against Plaintiff under Wal-Mart's leave and attendance policies.

32. Defendant's violations of the FMLA were willful.

33. As a direct and proximate result of Defendant's willful, wanton, and malicious acts described in part above, Plaintiff has sustained damages for the loss of employment. Plaintiff has incurred damages for lost wages, and other damages attendant with the retaliatory acts.

## COUNT III
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
## INTERFERENCE

34.    Paragraphs 1 (only as it relates to the anti-interference provision of the FMLA), 2, 3 (only as it relates to the anti-interference FMLA provision), 4, 6, 14, 15, 16, 17, 18, 19, 29, and 30 are incorporated herein.

35.    This is an action against Defendant for interfering with Plaintiff's rights under the FMLA.

36.    Defendant interfered with her rights and her eligibility for FMLA leave and coverage under the FMLA by failing to inform her that her leave was protected and covered by the FMLA, by failing to provide her with appropriate forms to complete and to provide to her healthcare providers to document eligibility; by refusing to authorize FMLA leave for her, by manipulating its records to deprive her of her protected leave and rights, by using her leave as a negative factor in the termination decision, and by counting the absences or tardies on and after February 15, 2023, against Plaintiff under Wal-Mart's leave and attendance policies.

37.    Defendant's violations of the FMLA were willful.

38.    As a direct and proximate result of Defendant's willful, wanton, and malicious acts described in part above, Plaintiff has sustained damages for the loss of employment. Plaintiff has incurred damages for lost wages, and other damages attendant with the retaliatory acts.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

(a)    that process issue and this Court takes jurisdiction over this case;

(b)    that this Court grant equitable relief against Defendant under the applicable counts set forth above, including but not limited to reinstatement, front pay where allowed by law, the removal of documentation from its records that constitutes violations of Plaintiff's rights, the grant of lost benefits since the date of termination, and  other equitable relief to Plaintiff;

(c)    enter judgment against Defendant and for Plaintiff awarding damages to Plaintiff from Defendant for Defendant's violations of law enumerated herein, including punitive damages as to Counts I, and liquidated damages as to Counts II and III;

15

(d)    enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law/ordinance enumerated herein;

(e)    enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs; and

(f)    grant such other further relief as being just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 28th day of February 2024.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:  (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF

16